Wedding docket for the day. It begins with 519-0064 in re Marriage of Rife. Counselor? When you're ready. I'm sorry. I'm Dr. Kibler. I'm here on behalf of the Petitioner Appellant. Okay. And you would not be the first, so pity for my staff. I'll have to make sure that the clerk gets a print of this. Okay, Mr. Kibler, when you're ready.         Okay. When you're ready. Okay. When you're ready. Okay. When you're ready. May it please the Court and Counsel, I'm Dr. Kibler. I'm here on behalf of the Southern Illinois Law Center in Carbondale, on behalf of representing the Petitioner Appellant for Ravelry Rife, appealing for the entry of an order establishing indefinite maintenance at the end of a 34-year marriage in the amount of $2,000 per month. As a practitioner, I have brought family law cases before the Court before. I imagine that many, if not most, family law appeals are simply asking this Honorable Court to second-guess the weighing of the evidence by the trial court. And that is not this type of appeal. Why? The standard is abuse of discretion, isn't it? It is abuse of discretion or against the manifest way to the evidence. And so just to be clear, at least it's not just that type of appeal. So there are some elements on the manifest way. But as to your question, Your Honor, there's some important legal issues implicated in this appeal. The trial came out of a petition to establish maintenance under 504 from the IMDMA. And in looking at the Court's order, I think the Court's order, the trial posture, I wasn't trial counsel, the proceedings of the trial, the Court's order demonstrates a problem with the statute related to the allocation of burden of proof. In 1992, the Fifth District in Interim Marriage of Gun, which is cited in our brief, analyzed and interpreted the language of the maintenance statute as it then existed and found that in light of a clause about the rehabilitative purpose of maintenance, that the burden is on the spouse seeking permanent or long-term maintenance to show the necessity for the maintenance. But at this point, to me, it's unclear whether that case law still applies to the current form of the statute today. Although the current form does have some language about rehabilitative maintenance in 8-4 and 8-6, the present statute, to me, seems to deemphasize the focus on rehabilitative maintenance. What do you think the purpose of maintenance is under the present statute? It's difficult to say because if it is not rehabilitative in purpose, there are these guidelines. And so there's this new focus on the guidelines of the statute, and so it may be equity towards a party that's a long-term participant in a marriage or simply some social concern for such a person's well-being. But suffice it to say that it's difficult to determine from the present statute whether or not the case law still applies and who has the burden of proof. And so that is the chief issue that I think is presented by the statute and by the court's order. And so my intent is to invite the court today to weigh in on this issue and provide guidance for practitioners like myself and for the court in this matter about the allocation of the burden of proof under 504 and how it should work. For example, unfortunately, it's interesting the legislature didn't address the issue, as I've said. 503 has seven mentions of the word presume, and I take that to be an allocation of burden of proof. 505 has 10 mentions, but 504 have no indications of the burden of proof in the explicit language. And so this is a problem because I think that the parties need clarity about who's to marshal the evidence and bring it before the court, who has the initial burden of going forward in terms of production and persuasion, whether or not those burdens shift at some point in time. And in particular, this case presents a situation. Do you think that this proceeding is any different than a civil proceeding where the movement tends to have the burden of proof? I agree that the movement should have the burden of proof. And interestingly, I did not find any Illinois case law that specifically stated that principle, which I think is axiomatic. I think, and I've cited this, that unfortunately I looked at federal cases that indicate that due process requires that if the legislature is silent, that the movement should have the burden of proof. But I didn't find any Illinois cases clearly on that point, and I certainly did some research. Well, how is that significant in your appeal? It's significant because I believe that the trial court found, first, that there was a failure of proof. And secondly, it's significant that I believe that the moving party did not meet the burden of proof. And so the trial court wrote a lengthy and detailed order about the evidence and credibility of the parties before him, in particular the credibility of the petitioner, but found it really didn't have any evidence other than its conclusory statement at the end that the petitioner had been able to make $2,000 of payments per month, and so it was going to continue to order that indefinitely. Well, one of the issues seemed to be, not the legal issues, but the problematic issues, was your client's failure to produce what the court considered to be credible evidence of his income. And so what is the court to do when a party, we see this in divorce cases a lot, where one party or another just continues to not produce financial information, and at some point the court has to say enough is enough and determine the credibility, right? Well, I think it's difficult because in this instance, the respondent never made an allegation and there were two parties, two witnesses, the respondent and the petitioner. The respondent never alleged concealment of income. And the petitioner didn't say anything that indicated concealment of income. It's just that the proofs put before the judge, he found he could not figure out what the petitioner's income was. And so that's another question I have is at what point in time on the proofs can the judge say, well, I think there's a concealment of income, and so therefore I'm going to award non-guideline payments. Well, let me ask you about some testimony that your client provided, and I'm reading from your proof, and you state on behalf of page 18 at the bottom. When asked whether the petitioner had less than $8,000 to live on the whole year of 2017, the petitioner replied, You know my understanding with the deductions, just like I pull campers, also with mileage. There is 400,000 miles on that 13 truck, and with deductions that I claim, I mean, I don't know how tax things work. But with deductions, and yes, that's mine, and if you again, if you need to see Mr. Manus, he is willing, ready, and able to visit you at any time. Explain what that means. That's incomprehensible to me. So the context for that conversation is five years of jointly prepared tax returns presented by the respondent to the accountant, two years separately prepared for the petitioner and presented to the accountant. And this conversation, or these questions that are happening, it's not a question about his, the petitioner's deductions for business purposes. One of the problems in this, in the context of this conversation is, although it's not required for 504, many courts in Southern Illinois that practice in front of them are now requiring financial affidavits to be presented as a standing order in the trial court. And these financial affidavits don't play well with non-W-2 income or asset scenarios. They just don't. So trying to bring in business income and expense and these types of information into these forms is difficult. So in the context of that, there's this conversation happening about on the tax returns versus this financial affidavit, what are these deductions, these business deductions, and how does that affect what his income really is with respect to, you know, the business versus his personal tax return? Okay, but I don't understand your answer to just this one question. I mean, I think your guy was asked, okay, is it true you lived on less than this amount? And basically, gibberish came back out. I think he didn't know the answer to that. But the purpose of the quote was to show he's not an accountant. He's responding as best as he can to the question being asked of him. He gave the information to the accountant, and there are deductions and things. He's not sure how they work. Well, then don't you think it's incumbent upon the petitioner to bring his accountant in so that they can explain, that the person can explain that to the court? I mean, one of the problems, I'm old enough to remember, I know, well, I won't say anybody else here is, but I'm old enough to remember practicing family law where you just couldn't get the financial information, and it took request after request after request. And meanwhile, the one client who has no income is sitting out there floating and going into bankruptcy. I mean, at some point, these rules, local rules, were put into effect so that this would be automatically forthcoming, like in the federal rules where you have automatic disclosures of some sort. And so the fact that maybe a business doesn't fit exactly into that pigeonhole, the burden is still on the parties by local rule to bring forth that financial information. There's no surprise there. So why doesn't your client bring that in? Well, he did present a financial affidavit, and unfortunately... But the court didn't believe it. There were problems with it. And in a moment, I'll turn to those evidentiary findings, if I may, on what the court's stating. Well, I want to go back to something you said, which is this. You said this isn't the typical case where we look at abuse of discretion. Yes. And I may have interrupted you on that. Yes. So I'd like you to tell me, why is your case different? Well, we are arguing that it's an abuse of discretion because the argument is that the court's finding was arbitrary in light of its announcement that it couldn't figure out what his income was. Okay. So you're saying there was a lack of evidence to support the record. That was his finding. But still, that would be an abuse of discretion. Yes. Okay. So it is an abuse of discretion. I'm just saying it's not typical and that there are legal issues here. There was evidence in the record that he spent $90,000 on vehicles, wasn't there? There was evidence in the record, but that wasn't cited as a basis, I don't believe, for the judge's ruling. There were loans and deductions and business expenses that were ongoing. So, yes. You don't disagree that this court can affirm on any basis in the record, do you? Well, certainly not. Certainly not. That's certainly true. And, look, I don't mean to be too informal when I say that, but it's an honor to appear in front of Judge Fiala. And this case was heard in July of 2018. The parties told the judge that they thought they would have an agreement. The case recessed for three months. The judge then sets it to get something done, I assume. And then the parties announced they had an agreement but for this issue. And so it's three, four months before a judgment issues. There's no transcript at the time that the order on maintenance issues. It doesn't come until later. There are some specific evidentiary issues that I'll turn to. But to answer your question, Your Honor, the problem that I have is if the burden of proof is on the petitioner, the person against whom maintenance is sought, to prove that he doesn't owe maintenance to her, then he can marshal his evidence, including the CBA, prior to trial. The problem in this case is that there's no disclosure of an expert prior to the trial by the petitioner. There's the joint returns of the parties that are in line with the returns he files afterwards. And then they go to trial, and the moving party doesn't put on an expert witness. So why should he have to have the burden of proof that he shouldn't owe maintenance? And that's the problem that I have, Your Honor. There were problems with the financial affidavit. But on the evidentiary issues now, those problems were somewhat addressed at trial. And, in fact, there was a stipulation in it on the record at R5758 where the petitioner is being examined about his financial affidavit. And it's very easy to do this, to double count mortgages and home payments or payments for living or residing somewhere and auto liens and car expenses. He double counted those. The double counting was worth just under $3,000. It stipulated, the respondent stipulates on the record that it's been double counted. The court's order, however, doesn't recognize that. At page 5 of the court's order, the court quotes the $10,744 amount, which is then overinflated by about $3,000. And, again, this is four months after the trial. There's no transcript. But the stipulation wasn't entered on the record sheet. There were items from the trial that were on the record sheet. The stipulation was not. So that was a significant evidentiary issue that led, it was obviously in the court's consideration about the petitioner's credibility. But when you say it was double counted on page 5 of the order, I had marked that myself. Wasn't, didn't that go to his benefit in the court's determination? No, it was an expense item. Right. The court deducted that. The court said that this, his monthly expenses are X. This leaves him with an alleged deficit of $8,400. But the court found that deficit was. Go ahead. Finish that sentence. The court found that the deficit was not rational given its view of his income and expenses. So the problem was that he was, the court was saying, we find that he's saying that his expenses are $10,000 something dollars per month and there's no way he can meet that on his income. But those expenses were overinflated by that stipulated amount. There were several other. Thank you. You'll get a few more. Thank you. Thank you. Mr. Reed. Haven't seen you in a while. Good afternoon. Good afternoon. My name is Jerry Reed. Greetings. I'm with the firm Reed Heller and Reed in Murfreesboro, Illinois. I represent Nancy Wright, who is the respondent appellee. The brief of the appellant raises three issues. The first issue is they say the maintenance award is arbitrary in light of the failure of proof. They state the court could not complete its analysis of income or needs because of Mr. Reif's income and the fact that it's unknown. From our perspective, if you boil the complaint down, Mr. Reif appears before this court saying the trial court made an error because he filed a false financial affidavit and because he filed to call a witness that he now has deemed was necessary for the court to make a proper determination. Because those things didn't happen, the trial court's ruling is arbitrary. What do you think about this burden of proof argument that he made? Your Honor, to be honest, I had trouble following it from this perspective. His client was the petitioner, and ordinarily a second stage hearing, his client would go first. When the court addressed trial counsel for the petitioner, Mr. Berkey said, well, we're here only on the maintenance question, and I feel Mr. Reif's client went first, so we went first. So is he complaining that he didn't get to go first? Well, he had that opportunity. Is he complaining that I went first? Well, he didn't object. So as I appear in front of you, Your Honor, I don't know who should have had the burden when we go in limited to that issue, but I don't understand his complaint because we went first and presented our case. But, well, the petition to award the maintenance was filed by your client, right? Yes, Your Honor. But that was within the overall proceeding. Yes, Your Honor. So I think what he's saying is because you filed it, you had the burden of going forward, which you did. Yes, Your Honor. So I guess that's my problem, is you did. So in a proceeding generally like this, under the new rules, do you believe that at some point you reach the threshold, yes, I'm entitled to maintenance now that we've met those statutory factors and now we move on? Do you think there is a shifting of the burden at some point under the new rules? I don't know, Your Honor. I know you're old enough to remember. I do, I do. You know, in this particular case, if they disagreed with the evidence we presented in meeting our burden of proof and they wanted to say, well, wait a minute, there's business expenses that aren't being considered or there's this and that that they haven't presented, then I think that would be evidence they would have the affirmative obligation to present. Whether that shifts the burden or not, I don't know. I felt the burden was on my client to show initially the need for maintenance and then secondarily to show what resources the parties had to pay that maintenance. I mean, that was what I had expected going in, and that was the evidence I presented toward those two conclusions. And I think that, don't you think that's what he's arguing, is that you did carry that burden? I think that he argues that it is my burden and that I had not met my burden, but I can't tell from the brief where he feels I came up short. He doesn't say that it was a short-term marriage and that's the problem. He doesn't say that my client had an education and was capable of earning more money, that that was the problem. I don't know what he feels the problem was. If he felt the problem was that the court didn't have everything available to it in terms of what his client's income was or should have been, I feel that was their burden because the information we presented to court would have included the following for the court to conclude what income was. And frankly, you feel a little bit like the Internal Revenue Service where you can't prove the income, so you try and prove income by what the expenses are. And in this case, Mr. Reif, both in trial court as well as in his appellate brief, states that he had $6,000 in monthly expenses. Well, the tax returns were not illuminating as to where that money came from, but he acknowledges and his financial affidavit shows that he was not incurring significant debt, as one might expect that has $72,000 a year in expenses and about $20,000 in income from the tax return. Other tax returns were put into evidence from 2010 through 2017, eight years worth. And he didn't make money. The tax returns did not reflect an income, and I think the court, in saying he could not rely on the tax returns, was basing that on the acknowledged expenses that were being met without incurring significant debt, so the money had to come from somewhere. Mr. Reif testified that his personal expenses were being paid from the business account. Well, you know, if you write off the mortgage payment and bury it down as a business expense, you don't have to show the income on your tax return on how you made that payment. But the evidence also showed another source for him to have this income, independent of how he handled it with his tax return for the business, and that is when you look at the bank statements that are in evidence from 2017, he had about $88,000 more in deposits than he put down on his business tax return for income. So he had all this income that wasn't expensed off, or his expenses would have been $88,000 more than the income he cleared. He had what I would call undisclosed income, which would have been more than enough to meet these expenses that he was having on a monthly basis without racking up any debt. So I think the court had ample evidence to conclude, both by what Mr. Reif did present in the financial affidavit, as well as his testimony that he met these expenses by writing them off as business deductions, and then you add to that what the bank statements show, where he has $80,000 in excess income that's not on his tax return, and I think the court had more than ample evidence to conclude what his income was and what it could base its award of maintenance on, considering the absence of evidence that he failed to present. Could you just clarify one thing for me, this rental income? Yes, Your Honor. Could you explain who had that and how that was considered? The parties had two rental houses, and each were getting income from one of the two houses. I hadn't realized until I reread the court's order that apparently my client had not put her rental income on her financial affidavit either, but that's where that came into play. The marital settlement agreement of the parties addressed both those rental houses and allocated them between the parties. Okay, thank you. The third issue that didn't have to deal with who had the burden of proof and whether it was met challenged the court's determination that the petitioner was not credible as a witness and because of that conclusion that its finding was against the manifest way of the evidence. It's always difficult for this court to draw conclusions as to credibility of the witness when they don't have the witness appear in front of them, they can't observe their demeanor, they can't listen to the pregnant pauses while there's a simple question and the person has to take five minutes to come up with a yes or no answer. However, beyond that disadvantage this court would have, the evidence is fairly concrete that there were serious challenges that the court saw in terms of the credibility of Mr. Reif. His financial affidavit, in addition to having math errors and overstating his monthly expenses by a significant amount, also understated his income. The only income he showed was $475 per month. Well, you got expenses on their face that are $10,000 a month, even with a math error to bring it down to $6, you only have $475 a month income, there's no big debt to show you're paying these expenses. The tax returns in and of themselves showing marginal income with the added testimony that he paid personal expenses to the business account would also raise one's credibility as an issue, basically implicating that he's filing tax returns that aren't accurate. The monies that went into his business checking account that didn't make it to the tax return with no explanation raises credibility issues. The court heard and considered the testimony concerning Nancy Reif, her work history, her past income, her current medical problems and the resulting limitations. The court knew what household expenses there were for both parties. The court knew an amount of income based upon the ability to meet living expenses without incurring major debt. The court's findings are consistent with the evidence. The court's ruling is consistent with the findings and the ruling is not an abuse of discretion. I ask that it be affirmed. Thank you. The respondent has admitted that it was his client's burden to prove up the needs of the parties and resources to pay for maintenance or their lifestyles. With regards to credibility, if that is his burden of proof, then on the facts that were before the trial court, I do believe that my client was credible. I'm not arguing that he wasn't, but assuming our argument that he wasn't credible, then what? His testimony is impeached. Then what evidence is left that proves up his income? What about the bank statements that Mr. Reed just mentioned? The problem with looking at... That show $80,000 of income in excess of the expenses or in excess of, yeah, $80,000 of deposits in excess of expenditures. The problem with looking at mere deposits, debits and credits from an account without more is just like in a law firm where you have hard costs for clients. There are expenses that pass through that don't have anything to do with your business income. There wasn't any evidence about what the nature of those deposits were. There was no evidence that he was concealing income of any kind. So just because there's cash flow doesn't mean it's synonymous with income. And I think it's quite a stretch to claim that it is. And that's where a CPA on the part of a respondent might have been helpful. I think the best thing... He's not in that cash business. No. I don't believe he was. His testimony was that he... And I didn't do the trial work, so I have the transcript. But his testimony was that he deposited all of his income into this bank account for Reif Exteriors, and that he took all of the documentation from that to his CPA, Mr. Mannis, and that his CPA prepared the returns. You know, so... I don't understand how you can have expenses, as he had, and as Mr. Reif pointed out, and incur no significant debt and still have $80,000 or $88,000 in the bank account. Why can't you prove the negative, that is, there is income because we know from the 8 years of tax returns that this is going on? We know from his bank statements that he's saving money, right? Why can't you prove the negative? I don't think the testimony was that he was saving money. You know, obviously, there's a snapshot at a point in time. But yet it's stashed. I think the problem is that there's income... The question really is why can't you... What's wrong with Mr. Reid's argument that you have to prove income via the reverse in a tax return? What's wrong with that argument? It leaves and ignores the idea that money received is not always income to you, certainly not for tax purposes, which begs the question under 504, what is income? What is income? And this is a problem that we are having as we address child support cases and other cases before the court. We have people that are not W-2 type people. They have extensive mileage deductions. So he's driving a camper trailer. And so I think answering your question dovetails with another evidentiary issue. The court said he had testified that he was regularly visiting, semi-monthly I think, his parents in Virginia. And the court on page 5 called into question his credibility. Page 5 of the order. The court says, quote, he did testify that one of the reasons his income is reduced is that he has to travel frequently to the East Coast to help take care of one of his parents. He did not explain how he could afford to do that given his alleged financial circumstances. However, the petitioner did testify, and this is in R65, 82, 83, R84, that he transports camper trailers for camping well manufacturer or wholesaler in Indiana to retail stores and specifically arranges two-day trips to take the campers to the vicinity in the south of his parents and then is able to treat those trips as the mileage as business deductions. That's how he affords those trips. So the problem with the court trying to come in and say, well, he didn't explain it. First of all, he did explain it, so it's not true that he didn't explain it. Secondly, he has these business deductions for his business that come into his financial affidavit. He's trying to present this information as accurately as possible and struggling and failing at it to some extent. And that comes out. I'm not a tax lawyer, but deductions, I don't understand your argument. Do you have to help me here? How does the court's statement, he does not explain how he could afford to do that. In other words, how can he have the money to pay for the gas? How does that relate to a deduction? I don't see the court saying that here. I think the court is saying, how does he do that on this $8,000 a year that he claims as income at the end of the year? How does he pay for the gas, right? Certainly. So the way a person would do that is by losing money over time or having income from other sources. He testified there were insurance proceeds in prior years that they both jointly shared that he was not making money. There was no evidence that he was current on his maintenance, as the court found. So it appears that he was under water and becoming more under water as he went. Okay. Thank you. All right. Thank you so much. All right. This matter will be taken under advisement. Thank you, gentlemen.